# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 6, 2010

Lyle W. Cayce
Clerk

No. 09-60307

BALJIT SINGH,

      Petitioner

v.

ERIC  H. HOLDER, JR., U. S. Attorney General

      Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A078 197 055

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

Baljit Singh, a native and citizen of India, petitions this court to review a Board of Immigration Appeals decision denying his motion to reopen removal proceedings, a familiar posture for Singh in this court.[1]  A Sikh who lived in Punjab before coming to America, Singh claims to have new evidence that – due to political persecution – he cannot safely return to India.  He did not persuade the Board of changed circumstances, and we deny relief, finding the Board acted

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *See Singh v. Gonzales*, 161 F. App'x 373 (5th Cir. 2006) (unpublished).

No. 09-60307

within its discretion. Just like the last time he came before us, "Singh has failed to show that there is a reasonable likelihood that he would be granted relief at the reopened hearing."[2]

### I.

After journeying halfway around the world, Singh was caught sneaking into the United States from Mexico in 2000. He applied for asylum, withholding of removal, and protection under the Convention Against Torture.[3] Singh testified before an Immigration Judge that the police in India thrice arrested and tortured him – and continue to look for him. Singh provided supporting affidavits from his father and a local elder. The Immigration Judge found Singh not to have testified in a credible manner: although Singh was a politically active Sikh, he failed to convince with the stories of arrest and torture. The Judge rejected the father's and elder's affidavits because, although neither knows English, each affidavit was "in English without any indication that the documents were read to either one of the affiants in their native language and that they [were] satisfied that the documents are true and correct."[4]

---

[2] *Id.* at 374 (citing *Guevara Flores v. INS*, 786 F.2d 1242, 1247 (5th Cir. 1986)).

[3] To prevail on his claim for asylum, Singh had to prove that he could not return to India due to "a well-founded fear of persecution . . . on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b); 8 U.S.C. § 1101(a)(42) (defining "refugee"). Withholding of removal under 8 U.S.C. § 1231(b)(3) requires even more – a *probability* of persecution. *See Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002). And, "[u]nlike the asylum and withholding of removal provisions, [Convention Against Torture] regulations do not require that the reason for the torture fall within one of the five categories of race, religion, nationality, membership in a particular social group, or political opinion. Another difference is that CAT does not require persecution, but the higher bar of torture." *Id.* at 907.

[4] The Immigration Judge found in the alternative – even if it "could conclude that [Singh's] testimony were credible concerning his prior arrests" – the police questioned Singh

No. 09-60307

The Board summarily affirmed the Immigration Judge without opinion, and Singh did not seek review in this court. He did, however, submit a motion to reopen, which the Board denied; on petition, this court too denied relief.[5] Singh filed a second and third motion to reopen, each of which the Board denied. On March 19, 2009, Singh filed a fourth motion to reopen, alleging that police throughout 2007 and 2008 had raided his father's house in Punjab, arrested him, and demanded to know Singh-the-younger's whereabouts. The police wanted to interrogate the son about a recent bombing. Singh gave the Board an updated version of the same story he had told the Immigration Judge and submitted an updated version of his father's English-language affidavit. Singh included what he claims is a Punjabi police summons left with his father. The Board denied the fourth motion, explaining that Singh had the burden of presenting evidence of changed circumstances to warrant reopening, but that – "[i]n light of the adverse credibility finding of the Immigration Judge" – Singh had not submitted sufficiently reliable new evidence. Singh petitions us to reopen his asylum claim.[6]

---

"in connection with a criminal investigation . . . relating to the assassination of a local official," considering Singh a suspect. Additionally, Singh did not have a fear of persecution throughout all of India.

[5] *See Singh v. Gonzales*, 161 F. App'x 373 (5th Cir. 2006) (unpublished).

[6] Despite our policy of liberally construing pro se litigants' briefs and applying less stringent standards to parties proceeding pro se than to parties represented by counsel, pro se parties must still brief the issues and reasonably comply with the standards of Federal Rule of Appellate Procedure 28 (which requires the brief to contain a statement of the issues and an argument). *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995); *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993). Singh in a couple of places has not met the requirements.

Singh filed a fifth motion to reopen on June 16, 2009, which the Board denied. Singh sought review in this court. We consolidated the petitions seeking review of his fourth and fifth motions to reopen, but Singh has not briefed any issues relating to his fifth motion,

No. 09-60307

II.

"[M]otions to reopen deportation proceedings are disfavored, and the moving party bears a heavy burden."[7]  We review the denial of a motion to reopen "under a highly deferential abuse-of-discretion standard,"[8] upholding the Board's decision so long as it is not capricious, racially invidious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach.[9]

Singh does not dispute that his fourth motion to reopen was both untimely and numerically barred.  However, the rules against untimeliness or multiplicity do not apply where the alien bases his motion to reopen an asylum or withholding of deportation claim upon "changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."[10]  The Board found that Singh did not carry this burden.

---

abandoning them.  The omission does not matter, though, as Singh's fourth and fifth motions to reopen raise identical issues.

And, other than stating the standards of review for his withholding of removal and Convention Against Torture claims, Singh does not argue their merits.  Again, omissions without consequence: Singh failed on his asylum claim because he did not prove reasonable fear of persecution or torture, dooming the other claims.

[7] *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 549 (5th Cir. 2006) (quotation marks omitted).

[8] *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005).

[9] *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006).

[10] 8 C.F.R. § 1003.2(c)(3)(ii); *see also Panjwani v. Gonzales*, 401 F.3d 626, 632 (5th Cir. 2005).

No. 09-60307

III.

Here, we "reasonably infer that the Board denied the motion to reopen based on the second ground enumerated in *INS v. Abudu*: 'the movant has not introduced previously unavailable, material evidence.'"[11] In fact, the Board explained that Singh produced no evidence. The Immigration Judge previously found Singh's father's first affidavit lacking because it was in English, a ruling Singh never challenged. The father's new affidavit – the one purporting to describe recent harassment – is also in English.[12] The passage of time does not make any less incredible an English affidavit for a non-English speaker. Instead of presenting something new to counter the underlying adverse credibility determination, Singh pounded away with the same tools.[13]

---

[11] *Manzano-Garcia v. Gonzales*, 413 F.3d 462, 468 (5th Cir. 2005) (quoting *INS v. Abudu*, 485 U.S. 94, 104–05 (1988)) (internal citation omitted).

[12] Unlike the first affidavit, the father's new one does contain a hard-to-decipher stamp stating that the affidavit has been read to the deponent who "seemed" to understand. This unattributable, after-the-fact mark does not address the Immigration Judge's language barrier concerns, as the father still has not indicated that the affidavit was ever translated into Punjabi. The document does not independently reflect that it was, to use the Immigration Judge's words, "originally prepared in any other language and then translated." By way of contrast, Baljit Singh's own affidavit to the Board swears that "the above statement has been read to me in English and Punjabi and I verify its contents to be true and correct in its entirety."

[13] Despite Singh's protestations, we have in persuasive unpublished cases held as we do here – that the Board does not abuse its discretion by basing its denial of a motion to reopen on an Immigration Judge's prior adverse credibility ruling. *See Mir v. Gonzales*, 207 F. App'x 498, 498–99 (5th Cir. 2006) (unpublished) ("Mir also contends that the BIA's denial of the motion to reopen was an abuse of discretion because it erroneously found the new evidence to be incredible, erroneously relied on the Immigration Judge's (IJ) original negative credibility determinations to so find, and failed to examine the requisite factors for assessing credibility on the record. . . . The assertion that the BIA erred in referring to the IJ's original negative credibility determination is without merit. Mir's complaint that the BIA erred in failing to explain its rejection of the new evidence in greater detail in the order denying the motion to reopen is similarly unavailing as the BIA has no duty to write an exegesis on every

No. 09-60307

This left Singh with a police summons to establish changed circumstances. The Board rejected the foreign document as unreliable, because Singh had not authenticated it pursuant to 8 C.F.R. § 287.6. In a persuasive unpublished opinion reviewing a motion to reopen, we have said the Board does not abuse its discretion when it decides not to consider unauthenticated foreign documents.[14] In yet another unpublished opinion, we upheld the Board's rejection of foreign documents in light of an Immigration Judge's "prior adverse credibility determination."[15] This trend – which we continue here – finds support in a published Second Circuit case holding that the Board may reject unauthenticated documents in light of an Immigration Judge's previous negative credibility determination.[16] In any event, Singh does not make clear how a police summons, without more,[17] establishes either a change in circumstances or

---

contention." (citation and quotation marks omitted)); *Kindia v. Gonzales*, 155 F. App'x 752, 753 (5th Cir. 2005) (unpublished) ("Finally, Petitioners argue that the BIA abused its discretion when it declined to reopen their case in light of new evidence that [Petitioner's] husband collaborated with rebels. The BIA's decision was not an abuse of discretion given the IJ's negative credibility determinations and absent any corroboration of [Petitioner's] new story." (citation omitted)).

[14] *Qi Hua Li v. Holder*, 354 F. App'x 46, 48 (5th Cir. 2009) (unpublished).

[15] *Chun Lin Yang v. Mukasey*, 305 F. App'x 232, 234 (5th Cir. 2008) (unpublished).

[16] *Qin Wen Zheng v. Gonzales*, 500 F.3d 143, 146–47 (2d Cir. 2007).

[17] Although Singh submitted documents about general conditions in Punjab, none reveal changed conditions. For example, a letter from the President of a Sikh political party explains: "Sikh youth, since 1984, continue to be in prisons. Our struggle for freedom and liberty continues. Though there is a change in the political leadership at the federal level in the country, there is no change in either the attitude or role of the present government towards the Sikh and other minorities. No religious, social, economic or political problem of Punjab has been resolved." And an article about human rights in India describes the Sikhs' "continuing struggle" over the last 25 years. In any event, the Board rejected Singh's case not because of the conditions in India, but because it found Singh's own story unbelievable.

No. 09-60307

reasonable fear of persecution.

IV.

The Board did not abuse its discretion in refusing to reopen Singh's case when he presented no material, previously unavailable evidence of changed circumstances. Nothing capricious, racially invidious, or arbitrary here. Singh almost a decade ago pleaded to the Immigration Judge that the police in his village harass his father and hunt for him – falsely accusing him of aiding militants. Now Singh looks to reopen his case, again urging that the police in his Punjabi village harass his father and seek to detain him – falsely accusing him of militant activities. Instead of describing a change in circumstances, Singh offers more of the same. The Board found Singh's story and documentary support not credible the first time, yet, in his motion to reopen, Singh recycles the old evidence without curing the flaws.

DENIED.